IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KING, ET AL.,                    :

      Plaintiff,             :
                                 :
      v.                     :
                                 :
E.I. DUPOUNT DE NEMOURS AND
      CO., ET AL.,

      Defendants.

Consolidated Under
MDL DOCKET NO 875

CASES LISTED IN EXHIBIT
"A" ATTACHED

**FILED**

AUG 2 5 2010

MICHAEL E. KUNZ, Clerk
By___:___ Dep. Clerk

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                    AUGUST 25, 2010

I.   BACKGROUND

Before the Court is Defendant AMF Inc.'s Motion to Dismiss
for failure to state a claim.  Plaintiffs filed these cases
claiming personal injury due to asbestos exposure in Texas state
court in 1995.  The cases were subsequently removed on the basis
of federal enclave jurisdiction and federal officer jurisdiction
and transferred to the Eastern District of Pennsylvania as part
of MDL 875 asbestos litigation.

In August 2009, the Court ordered a severed group, which had
been consolidated under lead Plaintiff Douglas King ("The King
Group"), to submit a discovery plan.  In October 2009, Defendant
AMF filed a Motion to Stay, or alternatively, Dismiss Plaintiff's
Claim for failure to comply with Tex. Civ. Prac. & Rem. Code Ann. §
90.003 (Vernon 2005) "Chapter 90" in each case in the King group.

1

Of a group originally numbering over 800 plaintiffs, counsel has elected to pursue 86 individual cases. The instant motion applies to all 86 cases and is presently ripe for adjudication.

Defendant moves to dismiss on the grounds that plaintiff failed to file a medical report by a board certified physician indicating that the exposed party has been diagnosed with malignant mesothelioma, or other asbestos-related cancer, or has asbestos-related pulmonary impairment, pursuant to TEX. CIV. PRAC. & REM. CODE ANN. § 90.003(a)(1)-(2). Defendant asserts that the Court is bound to apply Chapter 90, as it is Texas substantive law.

However, Plaintiffs argue that they are not bound by Chapter 90's medical report requirement because it is a procedural rule for the managing of asbestos dockets, and is therefore not controlling on an adjudication in federal court. Under Chapter 90, failure to submit the required medical report results in dismissal without prejudice, and Texas has instituted a pleural registry, wherein the claims of persons who have been exposed but not injured are placed on an inactive docket with the statute of limitations tolled, until such time as a physical impairment of the required threshold manifests itself. Plaintiffs argue, therefore, that Chapter 90 is a docket-management mechanism, and not a substantive rule. (Pl.'s Resp., doc no. 23, at 6).

For the reasons set forth below, the Court finds that the

requirement for the submission of medical reports under Chapter 90 exhibiting a minimum level of impairment is a matter of Texas state substantive law, and must be applied by this Court. Therefore, Defendant's motion to dismiss based on Plaintiff's non-compliance is granted.


II. LEGAL STANDARD

In reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the nonmoving party," however, the Court need not credit bald assertions and legal conclusions. <u>DeBenedictis v. Merrill Lunch & Co., Inc.</u>, 492 F.3d 209, 215 (3d Cir. 2007)(quotation omitted); <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 232 (3d Cir. 2008)(stating that the complaint's "'[f]actual allegations must be enough to raise the right to relief above the speculative level.'")(quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 & n.3 (2007)).

The Supreme Court recently expounded on the standard for dismissal pursuant to Fed. R. Civ. P. 12(b)(6) in <u>Ashcroft v. Iqbal</u>, __ U.S. __, 129 S.Ct. 1937 (2009). <u>Iqbal</u> established that in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'" Id. at 1949

(citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570

(2007)).


III. ANALYSIS

In Erie R.R. v. Tompkins, the Supreme Court brought to an

end the 100-year-old judicial practice of applying federal common

law to supply the rule of decision in diversity cases brought in

federal court. 304 U.S. 64 (1938)(rev'g Swift v. Tyson, 16 Pet.

1 (1842)). Under the Erie doctrine, in cases heard on diversity

jurisdiction, a federal court must apply state substantive law

and federal procedural law. Id. at 78; Hannah at 465.

For cases removed to federal court on the basis of federal

question jurisdiction, where the assertion of jurisdiction is

based on federal officer[1] or federal enclave[2] status, the Erie

substantive/procedural dichotomy also applies with equal force.

Chevron Oil Co. v. Hudson, 404 U.S. 97 (1971), rev'd on other

---

[1] 28 U.S.C. § 1442(a)(1) provides that "The United States or
any agency thereof or any officer (or any person acting under
that officer) of the United States or of any agency thereof, sued
in an official or individual capacity for any act under color of
state law" may remove a case against them to the district court
embracing the place where it is pending.


[2] Article I, Section 8, Clause 17 of the U.S. Constitution
grants exclusive federal jurisdiction over land which "by Cession
of particular States, and the acceptance of Congress, becomes the
Seat of the Government of the United States."

4

grounds, <u>Harper v. Virginia Dept. of Taxation</u>, 509 U.S. 86

(1993). In <u>Chevron Oil Co.</u>, the Supreme Court held that a

federal court acting under federal enclave jurisdiction must

apply Louisiana's statute of limitations, as it is "coordinated

with the substance of the [state] remedy" and not a mere

procedural "housekeeping rule." <u>Id.</u> at 103, n.6, <u>citing</u> <u>Hannah</u>

<u>v. Plumer</u>, 380 U.S. 460, 473.[3]; <u>see also</u> <u>Adams v. Alliant</u>

<u>Techsystems, Inc.</u>, 218 F.Supp. 2d 792, 796 (W.D. Va 2002)(holding

that the National Parks Act "does not incorporate state

---

[3] Federal jurisdiction in <u>Chevron Oil</u> was based on 43 U.S.C.
§ 1333 ("The Lands Act"). The Lands Act makes the Outer
Continental Shelf an area of exclusive federal jurisdiction, but
requires the court to apply the substantive law of the adjacent
state to a personal injury cause of action. 43 U.S.C. §
1333(a)(2).

The instant case is based on a similar statute. 16 U.S.C. §
457 ("The National Parks Act") states that

In the case of the death of any person by the neglect or
wrongful act of another within a national park or other
place subject to the exclusive jurisdiction of the United
States, within the exterior boundaries of any State, such
right of action shall exist as though the place were
under the jurisdiction of the State within whose exterior
boundaries such place may be; and in any action brought
to recover on account of injuries sustained in any such
place the rights of the parties shall be governed by the
laws of the State within the exterior boundaries of which
it may be.

<u>See also</u> <u>Murray v. Joe Gerrick & Co.</u>, 291 U.S. 432, 434 (1934)(in
causes of action occurring in a place subject to the exclusive
jurisdiction of the United States, 16 U.S.C. § 457 requires a
federal court to apply "existing law, as declared from time to
time by the state [within which] the cause of action occurred").

procedural housekeeping rules, such as rules of evidence or civil procedure, [but] the Act does incorporate outcome determinative state law.").

Therefore, under _Erie_, a federal court acting under federal enclave jurisdiction, such as in this case, must apply substantive state law to ensure that the "character or result of a litigation" is not materially different simply because the cause of action occurred on a federal enclave, and the case was brought in federal court. See _Hannah v. Plumer_, 380 U.S. 460, 467 (1965).

Whether a state rule is substantive or procedural involves a two step analysis. First, the Court must determine whether the state rule is in direct conflict with a Federal Rule of Civil Procedure. _Id._; _Hannah v. Plumer_, 380 U.S. 460 (1965). If so, the Federal Rule prevails. See _Gasperini v. Center for Humanities, Inc._, 518 U.S. 415 (1996). However, if there is no direct conflict, the court considers the "twin aims" of the _Erie_ doctrine: "discouragement of forum shopping and avoidance of inequitable administration of the laws." _Hannah_, 380 U.S. at 468. The Supreme Court has added two qualifications to the _Erie_ analysis. First, a strong federal interest may dictate the application of the federal rule. Second, the Erie doctrine cannot be used to avoid a Federal Rule of Civil Procedure. See _Chamberlain v. Giampapa_, 210 F.3d 154, 159 (3d Cir. 2000) _citing_

<u>Byrd v. Blue Ridge Rural Electric Coop., Inc.</u>, 365 U.S. 525, 538 (1958); <u>Hannah</u>, 380 U.S. at 470.

In this case, applying the <u>Erie-Hannah</u> analysis, as to the first prong, there is no direct conflict here between a Federal Rule of Civil Procedure and Chapter 90's medical report requirement. There is no federal procedure regarding a minimum threshold of asbestos-related injury before a case can proceed, and no corresponding pleural registry or deferred docket mechanism. Therefore, the inquiry turns on whether this Court's failure to apply Chapter 90 would so affect the outcome of the case that it would be prejudicial to defendants, and would cause plaintiffs to choose a federal forum to avoid the application of the rule.

In a case similar to the instant case, the Third Circuit held that <u>Erie</u>'s twin aims are best served by the federal application of a New Jersey law requiring the submission of a medical expert report in the early stages of litigation. The New Jersey statute at issue required medical malpractice claimants to submit a physician's affidavit stating that there exists a "reasonable probability" that the care alleged in the complaint falls outside acceptable professional standards. <u>Chamberlain v. Giampapa</u> 210 F.3d 154, 157 (3d Cir. 2000); N.J. STAT. ANN. § 2A:53A-27. Under the New Jersey law, failure to file an affidavit is deemed a "failure to state a cause of action" and

the case can be dismissed with prejudice. N.J. STAT. ANN. §
2A:53A-29; <u>Chamberlain</u> 210 F.3d 156 at 160. The Third Circuit
held that the affidavit requirement was a substantive rule to be
applied by federal courts because it was outcome-determinative in
the case, and must be applied for uniformity's sake. <u>Id.</u> First,
failure to apply New Jersey's affidavit requirement in federal
court "would produce a different outcome than that mandated in a
state proceeding" and therefore promoted forum shopping, by
offering plaintiffs who fail to meet the expert requirement a
forum in which their claim could survive. <u>Id.</u> at 161. Second, a
defendant in federal court would be prejudiced because they would
be subjected to litigation "before the dismissal of a non-
meritorious lawsuit could be secured, merely because the
plaintiff is a citizen of a different state." <u>Id.</u> Finally, the
court determined that there was no countervailing federal
interest that would outweigh the application of the state law in
federal court. <u>Id.</u>

Similarly, in the instant case, declining to apply Chapter
90's medical report requirement in the federal court would run
counter to <u>Erie</u>'s twin aims. Failure to apply Chapter 90 would
cause inconsistent results between Texas state courts and federal
courts, in that a claim in the state court would be placed in a
pleural registry while an identical claim in federal court could
proceed to adjudication. This result would encourage plaintiffs

to choose a federal forum to avoid application of Chapter 90's minimum threshold requirement, causing unfair prejudice to the defendant who is forced to defend a claim in a federal forum that would otherwise be placed on a pleural registry in Texas state court. While plaintiffs are correct that there is a docket management procedural component to Chapter 90, the Court finds that requiring a plaintiff to show a certain threshold of injury in order to prosecute a claim is substantive, as it affects the rights and liabilities of the respective parties.

Indeed, the Texas Supreme Court has held that Chapter 90's minimum threshold of injury requirement is a Texas substantive rule. <u>See</u> <u>In re Global Sante Fe Corp.</u>, 275 S.W.3d at 489 (Tex 2008). In that case, the Texas Supreme Court decided, in the context of silicosis personal injury suits, that the state law requirement that a claimant show a certain minimum threshold of injury before the case can proceed interferes with, and it pre-empted by, the Jones Act,[4] which has no minimum threshold requirement. While the Texas Supreme Court "express[ed] no opinion" as to whether a similar result would obtain in asbestos-related claims, the Court finds that there is no principled distinction to be made between the minimum threshold requirement

_____

[4] Congress has provided that Jones Act claims may be brought in federal or state court. 28 U.S.C. § 1331(1). Whether brought in federal or state court, federal maritime law supplies the rule decision. <u>See</u> <u>Engel v. Davenport</u>, 271 U.S. 33, 39 (1926). However, if the suit is brought in state court, state court procedural rules apply. <u>Id.</u>

of the silicosis and asbestosis provisions of Chapter 90.  _Id._ at

490.  Therefore, without the presence of a strong federal

interest, the Court is reluctant to find that the minimum

threshold requirement in Chapter 90 is procedural, when the

highest court of the state has interpreted it to be Texas

substantive law.

Plaintiffs argue that tort reform measures including minimum

impairment and deferred dockets in other states are considered

procedural mechanisms.  Florida and Ohio have enacted tort reform

measures similar to Chapter 90, and their courts have so far

interpreted these statutes to be docket-management measurements.

See Norfolk Southern Railway Co. v. Bogle, 287 N.E.2d 919, 926,

923 (Ohio 2007); OHIO REV. CODE ANN. §§ 2307.99-93 (placing

claimants on in "inactive docket" is "a procedural prioritization

of the asbestos-related cases on the court's docket.  Nothing

more."); see also DaimlerChrysler Corp. v. Hurst, 949 So. 2d 279,

287 (Fl. Dist. Ct. App. 2007)(a Florida statute requiring an

increased showing of injury for smokers bringing asbestos claims

is procedural, as it "merely affects the means and methods the

plaintiff must follow when filing or maintaining an asbestos

cause of action.").

The court disagrees.  To the contrary, given the decision of

the Texas Supreme Court that the minimum threshold requirement is

substantive, following the Ohio and Florida authorities in this

case would undermine Erie's twin objectives of promoting uniformity and avoiding forum shopping by compelling different outcomes depending upon whether the case was brought in federal or Texas court.[5]

IV.  CONCLUSION

For the reasons set forth above, Defendant AMF's Motion to Dismiss is granted and an appropriate order follows.

---

[5] This court applied Texas Supreme Court precedent to decide here that the minimum threshold of injury requirements are substantive.  It may well be that in jurisdictions where the state courts have declared minimum threshold requirements to be procedural, such as Ohio and Florida, Erie's twin objectives would best be served in those jurisdictions by a finding in the federal forum that these requirements are procedural.

# Exhibit A

| | E.D. PA Case No. | Plaintiff Name |
|---|---|---|
| 1 | 2:07-cv-71917-ER | Ackie, Aldwin Clement |
| 2 | 2:07-cv-71921-ER | Adkins, George J. (Deceased) |
| 3 | 2:07-cv-71934-ER | Anderson, Joseph Calvin, Jr. |
| 4 | 2:07-cv-71968-ER | Bedford, John Henry (Deceased) |
| 5 | 2:07-cv-71977-ER | Bess, Neal , Sr. (Deceased) |
| 6 | 2:07-cv-71986-ER | Black, Willie (Deceased) |
| 7 | 2:07-cv-71994-ER | Boone, Roosevelt (Deceased) |
| 8 | 2:07-cv-72015-ER | Brown, Louis |
| 9 | 2:07-cv-72054-ER | Canady, Vernon Carl, Sr. (Deceased) |
| 10 | 2:07-cv-72060-ER | Carmouche, John , Jr. (Deceased) |
| 11 | 2:07-cv-72061-ER | Carr, Ben (Deceased) |
| 12 | 2:07-cv-72087-ER | Collins, James Clyde, Sr. |
| 13 | 2:07-cv-72123-ER | Denton, William Howard |
| 14 | 2:07-cv-72127-ER | Diaz, Joe Soria |
| 15 | 2:07-cv-72137-ER | Dorsey, Willie , Sr. (Deceased) |
| 16 | 2:07-cv-72139-ER | Douglas, Weppie (Deceased) |
| 17 | 2:07-cv-72140-ER | Dousay, Gervis C. (Deceased) |
| 18 | 2:07-cv-72152-ER | Edison, Wilbert (Deceased) |
| 19 | 2:07-cv-72154-ER | Edwards, Carl (Deceased) |
| 20 | 2:07-cv-72174-ER | Felix, John Lewis (Deceased) |
| 21 | 2:07-cv-72218-ER | Garner, Stony |
| 22 | 2:07-cv-72221-ER | Gay, Kenneth Everett |
| 23 | 2:07-cv-72240-ER | Gonzales, Manuel Ybarra |
| 24 | 2:07-cv-72277-ER | Hall, Mike (Deceased) |
| 25 | 2:07-cv-72292-ER | Harris, Nelva Glenn |
| 26 | 2:07-cv-72297-ER | Hartsell, Michael Wayne |
| 27 | 2:07-cv-72302-ER | Haynes, Eddie (Deceased) |
| 28 | 2:07-cv-72313-ER | Heugatter, Charles Glen (Deceased) |
| 29 | 2:07-cv-72350-ER | Jackson, Clarence Oliver, Jr. |
| 30 | 2:07-cv-72356-ER | Jammer, Marsene , Sr. |
| 31 | 2:07-cv-72397-ER | Jones, Aaron Stephen, Sr. (Deceased) |
| 32 | 2:07-cv-72411-ER | Kelley, Charlie Lee (Deceased) |
| 33 | 2:07-cv-72473-ER | Martin, Jack Frederick |
| 34 | 2:07-cv-72476-ER | Mason, Curtis Lavern, Sr. (Deceased) |
| 35 | 2:07-cv-72488-ER | McCann, Charles Patrick |
| 36 | 2:07-cv-72500-ER | McElveen, Aquilla Hall (Deceased) |
| 37 | 2:07-cv-72507-ER | Meador, Ervin W. (Deceased) |
| 38 | 2:07-cv-72514-ER | Mercer, Joe B., Jr. (Deceased) |
| 39 | 2:07-cv-72522-ER | Mitchell, Raymond Thurman (Deceased) |
| 40 | 2:07-cv-72534-ER | Moorhead, Luther Ernest (Deceased) |
| 41 | 2:07-cv-72538-ER | Morgan, Ronald Dean (Deceased) |
| 42 | 2:07-cv-72543-ER | Mossier, J. R. (Deceased) |

# Exhibit A

| | E.D. PA Case No. | Plaintiff Name |
|---|---|---|
| 43 | 2:07-cv-72574-ER | Parham, Cecil Ivan (Deceased) |
| 44 | 2:07-cv-72575-ER | Parker, Dap Gene |
| 45 | 2:07-cv-72585-ER | Patton, Thomas |
| 46 | 2:07-cv-72611-ER | Porter, Harry Lee, Sr. (Deceased) |
| 47 | 2:07-cv-72622-ER | Raines, Manuel Lee |
| 48 | 2:07-cv-72654-ER | Roberts, Stewart Hunter |
| 49 | 2:07-cv-72669-ER | Russell, Francis Oliver (Deceased) |
| 50 | 2:07-cv-72712-ER | Skaggs, Charles |
| 51 | 2:07-cv-72730-ER | Sparks, Raymond Dale |
| 52 | 2:07-cv-72734-ER | Spurgeon, Virgil Martin (Deceased) |
| 53 | 2:07-cv-72741-ER | Stephney, Robie Jewel (Deceased) |
| 54 | 2:07-cv-72743-ER | Stewart, Ronald Glynn, Sr. |
| 55 | 2:07-cv-72752-ER | Tacker, Charles Edward |
| 56 | 2:07-cv-72762-ER | Thomas, Samuel (Deceased) |
| 57 | 2:07-cv-72822-ER | Watts, Euel Elmo, Jr. |
| 58 | 2:07-cv-72823-ER | Weaver, Joe Burtis, Sr. (Deceased) |
| 59 | 2:07-cv-72830-ER | Wheeler, Charles Ray |
| 60 | 2:07-cv-72834-ER | White, Charles Thomas |
| 61 | 2:07-cv-72838-ER | Whitesides, Robert Lafayette |
| 62 | 2:07-cv-72854-ER | Williams, Joseph , Sr. (Deceased) |
| 63 | 2:07-cv-72869-ER | Wolfe, Robert M., Sr. |
| 64 | 2:07-cv-72874-ER | Woodard, Henry , Jr. (Deceased) |
| 65 | 2:07-cv-72884-ER | Wright, Robert Henry (Deceased) |
| 66 | 2:07-cv-72905-ER | Aluiso, Julio D., Sr. |
| 67 | 2:07-cv-72909-ER | Anderson, Roy Lee (Deceased) |
| 68 | 2:07-cv-72911-ER | Arnold, Raymond D. (Deceased) |
| 69 | 2:07-cv-72912-ER | Atzenhofer, Fred , Jr. |
| 70 | 2:07-cv-72957-ER | Cartwright, Elmer (Deceased) |
| 71 | 2:07-cv-72966-ER | Clark, Larry N. (Deceased) |
| 72 | 2:07-cv-72992-ER | Driver, Clarence M. (Deceased) |
| 73 | 2:07-cv-72996-ER | Dvorak, Jaro John (Deceased) |
| 74 | 2:07-cv-73000-ER | Elliott, Lester (Deceased) |
| 75 | 2:07-cv-73013-ER | Foster, Kenneth Wayne |
| 76 | 2:07-cv-73023-ER | Garcia, Faustino M. |
| 77 | 2:07-cv-73062-ER | Hester, James C. |
| 78 | 2:07-cv-73096-ER | Kastner, Leonard Ray |
| 79 | 2:07-cv-73124-ER | Mathews, Calvin Clark (Deceased) |
| 80 | 2:07-cv-73135-ER | McPhail, Will Harold (Deceased) |
| 81 | 2:07-cv-73139-ER | Modica, Jerry Lee |
| 82 | 2:07-cv-73156-ER | Novosad, Joe William (Deceased) |
| 83 | 2:07-cv-73170-ER | Patterson, Delbert (Deceased) |
| 84 | 2:07-cv-73179-ER | Prince, Charles L. (Deceased) |

# Exhibit A

| | E.D. PA Case No. | Plaintiff Name |
|---|---|---|
| 85 | 2:07-cv-73225-ER | Stewart, Charles W., Jr. (Deceased) |
| 86 | 2:07-cv-73259-ER | Wyrick, Walter Clarence |

**CERTIFICATE OF SERVICE**
**(TX-E MEMORANDUM AND ORDER - 8/25/10)**

**MAILED TO:**

| | | |
|---|---|---|
| KAREN M. ALVARADO | WARREN A. GAGE | CHERYL D. OLESEN |
| STEVEN T. BARON | FRANCIS G. HARMON | HUBERT OXFORD |
| PARKER BOND BINION | FRANK W. HARMON | JAMES POST |
| JOSEPH C. BLANKS | MARK A. HENDRIX | JOSEPHINE H RANDALL |
| DAVID W. BURNS | TODD KALE | GEORGE T. SHIPLEY |
| CHRISTA NOL CHANCE | CHRISTINE S KIBBE | GERALD BYRO SIMS |
| HUBERT A. CROUCH | TODD KISSNER | WILLIAM MIL THOMAS |
| ROBERT E. DODSON | RICHARD J. LORENZ | JO B. WHITTENBUR |
| GERARD C. FOSCO | DAVID G. MATTHIESEN | |

**EMAILED TO:**

| | | |
|---|---|---|
| ALEX E. COSCULLUEL | JASON W FATHEREE | NORMAN W. PETERS |
| ANN HARPER | GAIL CUCANI JENKINS | RAYMOND GLE RANDLE |
| ANDRE M. LANDRY | JOHN ROBERT HENDERSON | STUART C ATWELL |
| ARTHUR R. ALMQUIST | CHRISTI G. JONES | SEAN M. HIGGINS |
| BARBARA JAN BARRON | JEFF WHITFIELD | BURTIS STEP RICE |
| C. ROBERT MACE | KIRK TODD FLORENCE | R. LYN STEVENS |
| A CHRISTOPH DERDEN | LARRY E. COTTEN | MARK G. ZELLMER |
| JAMES LANE WARE | FRED LEE BUTLER | TORI SMITH LEVINE |
| D. ALLAN JONES | LESLIE M. HENRY | THOMAS W. TAYLOR |
| DAVID W. LEDYARD | SANDRA F. CLARK | KIRK E. MARTIN |
| EDWARD M. CARSTARPHE | | |